IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ROBYN L. ROSE,

        Plaintiff,

v.                            Civil Action No. 2:13-cv-08873

C. R. BARD, INC.,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff Robyn L. Rose's Motion to Dismiss and/or for Summary Judgment as to Any and All Claims of Interested Party Ahmed Mohamed Kaissar. [ECF No. 7]. Mr. Kaissar has responded [ECF No. 10], and Ms. Rose has replied [ECF No. 11].[1] Accordingly, this motion is ripe for my review. As set forth below, the plaintiff's motion is **GRANTED**.

I. Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven

---

[1] Mr. Kaissar also filed a surreply [ECF No. 12] on July 29, 2016 without seeking leave of the court to do so. "Surreply memoranda shall not be filed except by leave of court." Local Rule Civ. P. 7.1(a)(7). Even if it was properly filed, however, Mr. Kaissar's surreply contains no relevant argument of fact or law.

MDLs, there are more than 75,000 cases currently pending, approximately 12,000 of which are in the C. R. Bard ("Bard") MDL, MDL 2187.

In the present matter, the plaintiff, Ms. Rose, moves to dismiss the claims of Ahmad Mohamed Kaissar, Ms. Rose's ex-husband and an allegedly interested third-party in Ms. Rose's litigation against Bard. Before considering the motion, I will provide a brief review of the relevant, uncontroverted facts. On October 9, 2009, the plaintiff was implanted with Bard's Align TO Urethral Support System (the "Align") in Tampa, Florida. At this time or sometime soon thereafter, the plaintiff developed complications that she contends are caused by alleged defects in the Align. On April 24, 2013, Ms. Rose filed suit against Bard alleging various product liability claims.

Several years after she was implanted with the Align, the plaintiff married Mr. Kaissar on April 1, 2013. A couple years later, on June 1, 2015, Ms. Rose's and Mr. Kaissar's marriage ended with a judgment of dissolution of marriage by the Circuit Court of the Tenth Judicial Circuit in Polk County, Florida. Ex. 1, Final J. of Dissolution of Marriage, at 7 [ECF No. 7-1]. In his findings of fact pursuant to judgment of the dissolution of Ms. Rose's and Mr. Kaissar's marriage, Judge Steven Selph of the Polk County Circuit Court found that Ms. Rose's cause of action in her Bard lawsuit accrued before the marriage and, therefore, is not a marital asset to be divided in the divorce proceedings. *Id.* at 8. As Judge Selph found, "[a]ny potential recovery by [Ms. Rose in the Bard litigation] is non-marital property, the cause of action accruing before this marriage occurred. Any recovery shall solely and

exclusively benefit the Wife, free from any claims by the Husband."[2] *Id.*

Despite Judge Selph's ruling, on June 23, 2015, Mr. Kaissar filed a Short Form Complaint as a third-party plaintiff, seeking to intervene in Ms. Rose's pending case against Bard. Short Form Compl. [ECF No. 6]. In the Complaint, Mr. Kaissar claims that any recovery Ms. Rose ultimately might receive in this litigation is "50/50 wife/husband assets." *Id.* at 5. In the instant matter, Ms. Rose filed a motion to dismiss or, alternatively, a motion for summary judgment against Mr. Kaisser's claims.

## II. Legal Standards

### A. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*,

---

[2] Although the Polk County Circuit Court refers to Ms. Rose's "class action lawsuit," Ex. 1 at 7 [ECF No. 7-1], the court is clearly referring to her suit against Bard in the Bard MDL, MDL 2187.

81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as the plaintiff did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Rose was implanted with the Align in Florida. Thus, the choice-of-law principles of Florida guide this court's choice-of-law analysis.

In determining which state's substantive law to apply, Florida courts utilize the "significant relationship" test delineated in the Restatement (Second) of Conflict of Laws § 145 (1971). *Chapman v. DePuy Orthopedics, Inc.*, 760 F.Supp.2d 1310, 1312–1313 (M. D. Fla. 2011). To determine which state has the most significant relationship with the tort case at issue, courts consider several factors including: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and

4

place of business of the parties; and, (d) the place where the relationship, if any, between the parties is centered.'" *Id.* at 1313 (quoting Restatement (Second) of Conflict of Laws § 145(2)). In this case, Ms. Rose, a Florida resident, was implanted with the Align at a hospital in Florida by a Florida doctor. Accordingly, Florida substantive law will apply to the present case.

### B. Motion to Dismiss

A motion to dismiss filed under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations' but 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A facially plausible claim is one accompanied by facts allowing the court to draw the reasonable inference that the defendant is liable, facts moving the claim from the realm of possibility into the realm of probability. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" do not make the possible plausible. *Twombly*, 550 U.S. at 555.

### III. Analysis

In her motion to dismiss Mr. Kaissar's claims, Ms. Rose asserts numerous reasons for why Mr. Kaissar has no claim or stake in her pending litigation with Bard. She first argues that Mr. Kaissar's main contention, which is that any recovery by Ms. Rose in her litigation against Bard should be considered marital property, has been previously litigated and is thus barred by res judicata and collateral estoppel. She further argues that Mr. Kaissar's claims are barred by Rule 24 of the Federal Rules of Civil Procedure because he failed to file his Short Form Complaint in conformity with the requirements of the Rule.[3] Finally, Ms. Rose argues that even if Mr. Kaissar could intervene in this litigation, he has no claims that he could assert against Bard as a matter of law.

In response, Mr. Kaissar filed an affidavit stating that he should be entitled to any recovery Ms. Rose may receive from her litigation with Bard because he had to act as Ms. Rose's caregiver while she was experiencing injuries that are allegedly caused by the Align. In this role, Mr. Kaissar alleges that he also suffered from a loss of intimacy with his ex-wife, incurred debt, and "had a heart attack and had to go through a lot of pain just to make sure [s]he was treated right." Kaissar Resp. at 1 [ECF No. 10].[4] Mr. Kaissar, however, does not explain the relevance of these

---

[3] Because Mr. Kaissar refers to himself as an "intervenor" in his Short Form Complaint, Short Form Compl. at 5 [ECF No. 6], the plaintiff, as well as the court, interpret his filing as an attempt to file a motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure.

[4] Mr. Kaissar additionally attached a dozen unexplained and seemingly irrelevant documents as exhibits to his response. Many of these documents purport to be Mr. Kaissar's medical records, which are irrelevant to the matter at hand, and documents that appear to be emails from Ms. Rose to Mr. Kaissar. In replying to Mr. Kaissar's response, Ms. Rose strongly declares that these documents are

allegations or respond to any of Ms. Rose's legal arguments for dismissing his claims. Below, I will address those arguments.

As an initial matter, Florida substantive law will govern the applicability of the doctrine of collateral estoppel because Ms. Rose's and Mr. Kaissar's previous dispute was adjudicated in a Florida state court.[5] *See, e.g., United States v. Warford*, 791 F.2d 1519, 1521 (11th Cir. 1986); 19 A.L.R. Fed. 709 (1974) ("It has been generally held or recognized that state law governs the applicability of the doctrine of res judicata or collateral estoppel in a federal court action in which jurisdiction is based solely on diversity of citizenship of the parties.").

The doctrine of collateral estoppel bars re-litigating an issue that has already been decided by a previous court of competent jurisdiction. Under Florida law, collateral estoppel applies where: "(1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction." *Quinn v. Monroe Cty.*, 330 F.3d 1320, 1329 (11th Cir. 2003).

Mr. Kaissar's Short Form Complaint is substantially the same as Ms. Rose's Complaint. Of note, Mr. Kaissar did not make a claim for "loss of consortium" in his Short Form Complaint.[6] Accordingly, all of the claims he alleges in his Complaint

---

completely fabricated. A quick review of these documents demonstrates that, even if the emails were relevant, their authenticity is suspect.

[5] Res judicata, or claim preclusion, is similarly raised as a bar to Mr. Kaissar's claims. In this case, it is unnecessary to consider both doctrines because collateral estoppel resolves this motion.

[6] While his Response to Ms. Rose's Motion to Dismiss contains allegations that appear similar to those found in a claim for loss of consortium, I note that Mr. Kaissar would not be able to assert a valid loss of consortium claim against Bard even if there were no other defects with his complaint. Under Florida law, a husband can only recover for loss of consortium if he was legally married to the injured party

belong solely to Ms. Rose given they relate solely to her injuries allegedly caused by the Align. Mr. Kaissar is not asserting distinct claims against Bard, but, rather, is arguing that he is somehow entitled to 50% of any recovery that Ms. Rose may receive pursuant to this litigation. Mr. Kaissar raised this same issue during his divorce proceedings. As stated above, Judge Selph of the Polk County Circuit Court found that Mr. Kaissar was not entitled to any potential recovery or proceeds that result from Ms. Rose's litigation with Bard. Ex. 1 at 8 [ECF No. 7-1]. Thus, Mr. Kaissar's objective in intervening in this litigation, to claim right to any of Ms. Rose's possible future recovery in her litigation against Bard, has already been determined by a prior court. Accordingly, as Ms. Rose and Mr. Kaissar were both parties in the previous litigation, the relevant issue is the same, and a final decision has been fully litigated and reached by the previous court of competent jurisdiction, the doctrine of collateral estoppel clearly applies in this case. Mr. Kaissar, therefore, has no stake in this litigation.

Alternatively, I also briefly note that Mr. Kaissar fails to meet any of the requirements for intervention under Rule 24 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 24 ("A motion to intervene…must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for

---

at the time of injury. *Fullerton v. Hosp. Corp. of Am.*, 660 So.2d 389, 391 (Fla. Dist. Ct. of App. 1995). Even in latent injury cases, the "time of injury" under Florida law is the time the plaintiff was exposed to the cause of the injury, regardless of when the plaintiff's claim began to accrue. *Id.*; *see also Flomenhoft v. Ga-Pacific, LLC*, 2013 WL 3491170, *2 (M.D. Fla. 2013). Thus, Mr. Kaissar was not married to Ms. Rose at the "time of injury," and he would not be able to assert a valid loss of consortium claim.

8

which intervention is sought."). As the Polk County Circuit Court noted, Mr. Kaissar has no property interest in any potential recovery Ms. Rose may receive in this litigation. Without a property interest, he does not have any grounds to claim intervention of right under Rule 24(a).

Additionally, except for referring to himself as an "intervenor" sporadically throughout his Short Form Complaint, Mr. Kaissar has not provided any legal or factual grounds upon which he could seek permissive intervention pursuant to Rule 24(b). Even when factoring in that Mr. Kaissar is a pro se litigant, his Complaint is incurably insufficient to find any grounds for intervention under Rule 24. *Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989) ("Pro se litigants are entitled to some deference from courts…But they as well as other litigants are subject to the time requirements and respect for court orders without which effective judicial administration would be impossible.") (internal citations omitted). Thus, Mr. Kaissar fails to meet the requirements of Rule 24 of the Federal Rules of Procedure to intervene in this litigation.

## IV. Conclusion

For the several reasons discussed above, it is **ORDERED** that the plaintiff's Motion to Dismiss Any and All Claims of Ahmed Mohamed Kaissar [ECF No. 7] is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to Mr. Kaissar via certified mail, return receipt requested to the following address:

Mr. Ahmad Mohamed Kaissaar
1100 U. S. Highway 27
Unit 136972
Clermont, FL 34713

ENTER: August 2, 2016

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE